TIMOTHY DELANY v. JOHN NOBLE, Administrator of JAMES MAHER, deceased, and JOHN DOLEY and ALICE his wife.

On a bill praying a distributive share of the estate of an intestate, the court should be satisfied not only that the complainant is entitled to a part of the property, but also to what part of it he is entitled.

The complainant must prove affirmatively that he is entitled as one of the next of kin, and negatively that there are none others who are entitled, except those whose right he admits.

To examine a witness more than once without leave, is opposed to the policy not only, but to the rules and practice of the court.

But if the opposite party do not object to evidence thus taken, it does not lie in the mouth of the party offering it to call it in question.

BILL by one of the next of kin of an intestate, against the administrator, for an account, and for a distributive share of the estate. The cause was heard upon bill, answer, replication and proofs.

*W. Halsted,* for complainant.

*Hamilton,* for defendants.

THE CHANCELLOR. James Maher, the intestate, a native of Ireland, died in this state in eighteen hundred and thirty, and administration of his estate was committed to John Noble, of the county of Hunterdon. The complainant, claiming to be one of the next of kin, seeks to recover the one half part of the personal estate. He alleges himself to be the sole surviving nephew of the decedent, and that Alice, one of the defendants, is the sole surviving niece; and the principal inquiry is, whether he has made out his claim in such way as to entitle him to a decree.

The administrator makes no personal claim to the money, but sets up in his answer that other claimants have presented themselves, against whom he seeks to be protected. In the course of this suit, Noble, the administrator, filed a bill of interpleader against the present complainant and the other claimants; but

56

the defendants, with the exception of James Maher and one other, having failed to put in answers, that bill was, after great delay and indulgence on the part of the court, dismissed; and the inquiry is reduced to a simple point, whether Delany has proved himself to be clearly entitled to any part of the property, and if to any, what part of it?

The testimony in this case is not quite as satisfactory as I could have wished, in order to found a decree that may not only be a shield to the administrator and effectually protect him from other claimants, but be just to the next of kin. There should be no reasonable doubt as to the right of the complainant, before the money is ordered to be paid over; for a mistake once made can never be rectified.

I think it sufficiently established, that Timothy Delany, the complainant, is one of the next of kin of the intestate. Three several witnesses prove the fact that Maher in his life time acknowledged Delany as his nephew. Charles Holland, who had been acquainted with Maher from eighteen hundred and seventeen till he died, says that he, Maher, brought Delany to John M'Guigins's, and told M'Guigins that Delany was his nephew, and if he would board him, he, Maher, would pay him for it, and he did pay him accordingly. Mary Handler says, that in a conversation with Maher about his property, he said he had a sister's son, and if he had any property he would leave it to him; and some time after, he brought Delany to her house, and said that was his sister's son. He directed her to get breakfast for him, and paid for it. Elizabeth Sheridan testifies, that she knew Maher sixteen or seventeen years, and Delany about ten years. Maher often brought Delany to her house, and called him his nephew. On one occasion Delany was sick, and Maher brought him to her house that she might take care of him for a day or two, until he got well, and he, Maher, promised that he would pay for it.

If there had been evidence to show that these persons, Maher and Delany, were acquainted in Ireland, or that Maher acknowledged that he had known Delany there, it would have been

[Delany v. Noble et al.]

more satisfactory; but as these declarations were made at different times and to different persons, and as the testimony of these witnesses is not impeached, I am bound to consider, in the absence of all evidence to the contrary, that Maher was satisfied of the relationship, and that the complainant is the son of decedent's sister. There is some little hearsay evidence, which may at times weigh something in a case of pedigree, but it is of little importance. What there is, corroborates the complainant's testimony and claim.

As to Alice Dolby, who being beyond seas is made a party defendant, it appears by the testimony of M'Graugh, who married her daughter, that she is still living; and being the sister of Delany, she is also entitled.

That these two are entitled to the whole of the property, is not so well made out.

The bill charges that Timothy Delany is the son of Catharine Delany, formerly Catharine Maher, who was the sister of James Maher; and that James Maher had only one brother, viz. Lawrence Maher, who died without issue previous to the death of the said James Maher. But Edward Kenna, one of the complainant's witnesses, swears that he left Ireland about a year before his deposition was taken; he knew Catharine Delany, and she had three brothers, viz. John, William and Edward. Edward died about twenty-seven or twenty-eight years ago, and the other two died between twenty and twenty-seven years ago. Again, he says, Catharine's parents had five children, James who came to this country, John, William and Edward; they are all dead without issue, except Catharine, who left Timothy and Alice.

This is widely different from the allegations of the bill, and is a discrepancy which cannot fail to excite surprize. Timothy Delany must have been a man in years when he came to this country, and it is difficult to understand why he should know so little of his own family. They all lived at Ballynahill, in the county of Queens, or at Freshford, in the county of Kilkenny. Those two counties are inland and adjoin each other, and the two towns above mentioned are not far distant; and yet the ac-

[Delany v. Noble et al.]

counts given of the family by the complainant and his witness are greatly variant. The complainant alleges that he had but one maternal uncle, who was named Lawrence; whereas the witness swears he had three, and neither of them was known by that name, but all by other names. Unless this matter can be explained or rectified in some way, I do not see how the court can act with safety in distributing this money.

It may be answered, however, that whichever statement is taken, the result is the same; both show that the only next of kin surviving is the complainant and his sister. However this may be, I am not willing to rest upon a conclusion so obtained. The allegations and proof differ in what I consider an important particular, and it would be unsafe to rest upon a result drawn from such contradictory sources.

This Edward Kenna was examined twice by the complainant, and without leave. This was irregular. It is opposed to the policy not only, but to the rules and practice of the court. But as the defendants have not objected to the evidence, it does not lie in the mouth of the complainant to call it in question. A comparison of his two depositions shows that little reliance is to be placed upon either. In the first one, he says he was born and brought up in Queen's county, (in and near which the family resided,) but he was acquainted with none of the Mahers there except Catharine, the mother of Delany. In the second, he says he was acquainted with Catharine, and mentions that she had three brothers, gives their names, and the times of their death. He had heard of John being married, but never heard of his having any children. He then says, I was well acquainted with the family, the principal part of them lived at Freshford, Kilkenny county; and he thinks if John had had any children, he should have known it. This testimony cannot be reconciled, and goes far to show that no dependence is to be placed on any of it, unless confirmed.

If the last deposition be excluded as irregular, there will still remain a difficulty; for the first one does not prove the charges of the bill, that James Maher had but one brother, who was named

Lawrence and is dead. It proves that the deponent knew nothing of the family, and therefore could not say how many brothers and sisters Maher had, or how many nieces and nephews there may be living to share the estate, besides the complainant and his sister.

If the testimony of this witness is excluded entirely, the same difficulty will present itself. The complainant will be driven then to rest upon the evidence of M'Graugh. He is a young man who married the grand-niece of the intestate, and who testifies nothing and knows nothing of the older branches of the family. He says in one part of his testimony, that all the family in Ireland were dead at the time he married, except Alice, his mother-in-law; but lest this might convey a more extensive meaning than he intended, he afterwards says, that by all the family, he means the uncles and aunts of his wife, except Timothy; thereby showing conclusively that he meant to say nothing concerning the brothers or sisters of James Maher. They were not uncles and aunts of his wife, but of his wife's mother.

In whatever aspect, therefore, the testimony is considered, it is plain *the party* is not prepared at this time to ask a specific decree at the hands of the court. These are cases in which great caution is necessary, to avoid embarrassment and mistake. The burden of proof is wholly on the complainant. He must prove affirmatively that he is of the next of kin, and negatively that there are none others who are entitled. If one claims as an only child, he must prove that he is a child, and also that there are no other children. And so, if one claim as a nephew, he must show the relationship, and also that there are none others related in an equal or higher degree, or the claim is not supported.

In this case Delany claims as one of the children of Catharine Maher, a sister of the intestate. He has made out the fact of relationship, but the intestate may have had other sisters, or may have had brothers, and if they are living they are also entitled; if dead, they may have left children who are entitled, standing *in loco parentis.* The complainant, before he can perfect his

right, must prove that there are none entitled but himself and his sister, whose right he admits.

This is not a case, however, in which the party is to be turned out of court. He is claiming nothing adverse to the defendant, who is a mere trustee, and has nothing to gain or lose by the event of the cause. All he can desire is, that the funds be properly distributed, and that he himself be protected. The complainant has made out one part of his case in such way as to induce the belief that he has some merits; and I think justice requires the cause to stand over for further proof. If the complainant shall think proper to avail himself of the privilege now granted, the testimony must be taken upon notice, as in other cases. And the defendant, also, will be at liberty to examine witnesses in resistance of the claim of the complainant, or any part of it. And this last permission is given the rather, because the testimony of the defendant was entirely excluded at the hearing, on the ground of its having been irregularly taken. The court is desirous of having before it all the facts that can be adduced on either side.

The question of commissions and counsel fees is reserved until the cause shall again be heard, as they cannot well be definitely settled until it shall be ascertained what further trouble and expense the administrator may be subjected to.